IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DEEP GREEN WIRELESS LLC | § | |
| | § | |
| v. | § | Case No. 2:16-CV-0604-JRG-RSP |
| | § | |
| OOMA, INC. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Ooma, Inc. ("Ooma")'s Motion to Transfer Venue to The Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 19) ("Ooma's Motion to Transfer"), to which Plaintiff Deep Green Wireless LLC ("Deep Green") filed a Response in Opposition to (Dkt. No. 24), Ooma filed a Reply to (Dkt. No. 26) and Deep Green filed a Sur-Reply to (Dkt. No. 28). As set forth below, the Court **GRANTS** Ooma's Motion to Transfer.

I.  BACKGROUND

Deep Green is a "Delaware limited liability company." (Dkt. No. 1 at 1, para. 1). Deep Green has its office and principal place of business in Miami, Florida. *Id.*

Ooma is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1880 Embarcadero Rd., Palo Alto, California. (Dkt. No. 19-1 at 2, para. 2). As of July 28, 2016, there were approximately 160 Ooma employees in the State of California, with the vast majority located in the Palo Alto area. *Id.* at 2, para. 3.

II.  RELEVANT LAW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought

would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009).

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15. Timely motions to transfer venue should be

"should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## III. ANALYSIS

Ooma argues that Deep Green has not alleged that it has any connection with the State of Texas, nor has it alleged that Ooma has any connection with Texas beyond Ooma's products potentially being sold in Texas. (Dkt. No. 19 at 1). Ooma also asserts that both the private interest factors and the public interest factors compel transfer to the Northern District of California pursuant to 28 U.S.C. §1404(a). *Id.* Ooma further contends that there are no factors – e.g., no known relevant documents or witnesses located in Texas, the named inventor on the asserted patent U.S. Patent No. RE42,714 ("the '714 patent") appears to have no ties to Texas and lives in Massachusetts (Dkt. No. 24 at 1), and the fact that Deep Green, a Florida company, has no ties to Texas – that actually favor venue in this District. *Id.* Therefore, Deep Green urges the Court to transfer this case due to the "stark contrast in relevance, convenience, and fairness between" the Eastern District of Texas and the Northern District of California. *Id.*

In response, Ooma contends that Ooma's Motion to Transfer should be denied because Ooma has failed to establish that the Northern District of California is "clearly more convenient" as required by the case law and 28 U.S.C. § 1404(a). (Dkt. No. 24 at 1, 2-3).

The Court will now turn to weighing the private and public interest factors in order to ascertain whether transfer to the Northern District of California is warranted here.

A.  **Private Interest Factors**

   1.  **Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). This factor is still to be weighed, regardless of whether the documents are in electronic form and can be easily transported. *See Kroy IP Holdings, LLC v. Starbucks Corp., Inc.,* No. 2:13-cv-936-JRG, 2014 WL 5343168, at *2 (E.D. Tex. Sept. 30, 2014) ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor…Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases."). However, this factor may be accorded less weight if the documents are in, or can be converted into easily-transportable electronic form. *See Rembrandt Patent Innovations, LLC v. Apple, Inc.,* No. 2:14-cv-0015-JRG, 2014 WL 3835421, at *2 (E.D. Tex. Aug. 1, 2014) ("[G]iven the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in [The Court]'s decision.").

Ooma states that all physical documents and electronic records relating to the research and development, design, testing, sales, advertising and marketing of their accused products are located in Palo Alto. (Dkt. No. 19 at 3). Ooma also states that it does not operate any offices nor have any physical facilities located in Texas, nor does it maintain any company documents in Texas. *Id.* Ooma also keeps prototypes of the accused products – which Ooma asserts are certainly relevant to this lawsuit – at its headquarters in the Northern District of California. (Dkt. No. 26 at 1). Ooma also states that Deep Green has made no allegations that any documents or records that are relevant to this case are located in Texas. (Dkt. No. 19 at 3).

In response, Deep Green states that Ooma focuses entirely on its own documents, ignoring that relevant evidence will come from Deep Green and third parties as well. (Dkt. No. 24 at 4). Deep Green asserts that its documents are located at the headquarters of its managing member General Patent Corporation in Suffern, New York. *Id.* Deep Green also states that the documents of the attorney who prosecuted the '714 patent are believed to be located in Atlanta, Georgia. *Id.* at 4-5. Because Suffern, New York (1,463 miles from Marshall and 2,908 miles from San Francisco) and Atlanta, Georgia (635 miles from Marshall and 2,473 miles from San Francisco) are "substantially closer" to this District than to the Northern District of California, Deep Green argues that "Ooma is seeking to trade Deep Green's convenience for its own convenience." *Id.* at 5. Deep Green also argues that because Ooma's documents can be readily converted to electronic form, the weight given to this factor for transfer should be minimal. *Id.* Finally, Deep Green asserts that Ooma's physical prototypes, which are not the accused devices themselves and which are not asserted to be prior art, are "extremely unlikely to play any role, let alone a significant role, in the trial of this matter." (Dkt. No. 28 at 2). Even if it would be necessary to transport the prototypes to trial, the accused devices are small consumer devices that can be easily shipped to any location in the United States (and Ooma regularly sells and ships accused devices to consumers in this District). *Id.*

On balance, the Court finds that this factor weighs only slightly in favor of transfer. Although courts look to the location of the accused infringer's documents, and all of Ooma's documents are in Palo Alto, most of these documents appear to be in electronic form. The same would apply to Deep Green's documents in New York and Georgia. As to the location of prototypes, any burden of transporting such evidence is mitigated by the likelihood that such exhibits are small consumer devices.

Therefore, the fact that there are both physical documents, records and prototypes, in addition to electronic documents in Palo Alto weighs only slightly in favor of transfer to the Northern District of California.

**2.      Availability of Compulsory Process to Secure the Attendance of Witnesses**

'This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.,* 581 Fed. Appx. 886, 889 (Fed. Cir. 2014), *citing Genentech,* 566 F.3d at 1345.

Ooma asserts that all of its employees who have relevant knowledge of, experience with, or decision-making authority relating to the sales, marketing, advertising and promotion of the accused Ooma products in the United States are located at Ooma's headquarters in Palo Alto. (Dkt. No. 19 at 3). In addition, Ooma states that all of its employees with relevant knowledge of technical issues relating to the accused Ooma products that will be a part of this litigation and subject to discovery – including research and development, design and testing – are located in Palo Alto or in the surrounding communities. *Id.* Ooma has also identified six (6) party witnesses who are currently Ooma employees resident in Ooma's Palo Alto headquarters that make all sales, advertising, promotional, marketing and financial decisions pertaining to the accused Ooma products. *Id.* at 3-4. Ooma has further identified seven (7) non-party witnesses who were primarily responsible for the initial development of the accused Ooma products and are no longer Ooma employees or were independent contractors. *Id.*

In response, Deep Green argues that Ooma fails to identify any *unwilling* third party witnesses with *actual, rather than potential relevant* knowledge located in the Northern District of California. (Dkt. No. 24 at 6). Deep Green contends that despite the seven non-party witnesses mentioned above, Ooma has not identified any third party witnesses who allegedly would be *unwilling* to attend trial in this District if requested; that is, compulsory process is not likely for

them, and as a result, their probative value in the analysis related to *compulsory* process is thus limited. *Id.* at 6-7. Deep Green further argues that there is also simply no evidence that these seven identified former employees are likely to be called as non-party witnesses at trial in this action because Ooma lists them as individuals "who potentially have knowledge" relating to various aspects of Ooma's business. *Id.* at 7. Thus, this does not mean that these seven non-party witnesses have knowledge that is relevant to this action, have relevant knowledge that is not in the possession of a present Ooma employee or duplicative of an Ooma party witness, or are likely to be called as witnesses. *Id.* Deep Green additionally asserts that to the extent that any third party witness testimony is needed, both this Court and the Northern District of California may command any such third party witnesses to attend and be subject to being deposed, with the parties allowed to present such deposition testimony at trial in lieu of live testimony. *Id.* at 7-8.

Deep Green has also identified at least three party witnesses based in Tyngsboro, Massachusetts (Philip M. DeLaine, Jr., inventor of the '714 patent) and Suffern, New York (Alexander Poltorak and Kathlene Ingham), and a single third party witness based in Atlanta, Georgia: Mr. Alton Hornsby III, the attorney who prosecuted the application for the '714 patent, and who, as Deep Green declares, "is a third party to these proceedings, will be a source of evidence in this case and will need to be called as a witness at trial." *Id.* at 2.

On balance, the Court finds that this factor weighs in favor of transfer. Ooma has identified seven non-party witnesses who were responsible for the initial development of the accused Ooma products whereas Deep Green has only identified one non-party witness, the patent attorney who prosecuted the '714 patent, who is also not subject to the subpoena power of this Court – therefore, he has no bearing on the weighing of this factor. Although Deep Green raises the issue that Ooma's seven identified non-party witnesses may be "willing" witnesses that are outside the purview of

compulsory process, the Court finds that their presence is still relevant to the weighing of this factor and does not alter the analysis under Federal Rule of Civil Procedure 45.

In addition, the Court does not find persuasive Deep Green's arguments suggesting that the relevant knowledge of Ooma's seven non-party witnesses is speculative or duplicative of testimony of current Ooma employees. Ooma's seven non-party witnesses had primary responsibility for the initial development of the accused products, and likely possess unique knowledge or information regarding the accused products. In fact, Ooma has filed a declaration to this effect, explaining why these third party witnesses have such unique or special knowledge, which distinguishes this case from Deep Green's cited case of *Kroy IP,* where no declarations were offered asserting that former employees had non-duplicative testimony. (Dkt. No. 26 at 2). Therefore, the Court finds that this factor weighs **in favor** of transfer.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Diamond Grading Techs. v. Am. Gem Soc'y,* No. 2:14-cv-1161-JRG-RSP, 2016 WL 1271568 (E.D. Tex. Mar. 31, 2016); *Saint Lawrence Comm. LLC v. LG Elecs., Inc.,* No. 2:14-cv-1055-JRG, 2015 WL 7854738 (E.D. Tex. Mar. 20, 2014); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time with overnight stays, an increased probability of meal and lodging expenses, and time away from their regular employment. *Portal Technologies LLC v. Yahoo! Inc.,* No. 2:11-cv-440-JRG, 2012 WL 3242205, at *4 (quoting *Volkswagen I,* 371 F.3d at 205). "A district court should [also] assess

the relevance and materiality of the information the witness may provide." *Genentech*, 566 at 1343; *see also ThinkTank One Research, LLC v. Energizer Holdings, Inc.,* No. M-15-0389, 2015 WL 4116888, at *2 (E.D. Tex. July 7, 2015). However, even though there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information," the movant must still provide enough information to allow the Court to make the required assessment. *Genentech* at 1343-44.

As mentioned previously, Ooma identifies seven non-party witnesses likely to have unique knowledge relevant to the accused products in this case while Deep Green identifies only one non-party witness, Mr. Hornsby, the attorney who prosecuted the '714 patent.

In response, Deep Green identifies material witnesses located in Suffern, New York (employees that work at its managing member General Patent Corporation), Atlanta, Georgia (Mr. Hornsby, who prosecuted the asserted '714 patent), and Tyngsboro, Massachusetts (Mr. DeLaine, Jr., the named inventor of the '714 patent), and argues that "all of these locations are substantially closer to this District than to the Northern District of California." (Dkt. No. 24 at 8). Thus, Deep Green accuses Ooma of "seeking again to trade the convenience of Deep Green's witnesses for the convenience of its own" and states that because Mr. Hornsby is the only true third-party witness in this case and based in Atlanta (which is "substantially closer" to this District than to the Northern District of California), this factor weighs against transfer. *Id.* at 9.

On balance, the Court finds that this factor weighs in favor of transfer. For the same reasoning as discussed above, the hardship exacted on Ooma's seven non-party witnesses having to travel from Palo Alto to Marshall outweighs the inconvenience that Deep Green's single non-party witness (Mr. Hornsby) experiences when traveling from Atlanta to the Northern District of California. Even if the Court adopts Deep Green's argument that all seven of Ooma's non-party

witnesses do not have relevant, non-duplicative knowledge and should not be figured into the weighing of this factor, or adopts Ooma's argument that Mr. Hornsby "is not likely to testify at trial" and "highly unlikely" to be called as a witness, Ooma has still identified six party witnesses that will incur more hardship in traveling from Palo Alto to Marshall versus Deep Green's three identified party witnesses that must travel from Tyngsboro, Massachusetts and Suffern, New York to the Northern District of California.

    **4.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive**

Ooma implies that this factor is neutral as to transfer by stating that (i) "this District and the Northern District of California are equally adept at handling patent infringement lawsuits," (ii) both "districts use similar patent-specific case management plans designed to increase litigation efficiency and reduce litigation delay and expense" and (iii) neither "court has more familiarity with the asserted '714 patent than the other." (Dkt. No. 19 at 11).

In response, Deep Green asserts that there "are practical problems that make trial easier, more expeditious and less expensive in this District than in the Northern District of California" and as such, argues that "this factor weighs against transfer." (Dkt. No. 24 at 9). Specifically, Deep Green points to the presence of consolidated cases in this District where the asserted '714 patent is also at issue, and contends that this Court is already somewhat familiar with the '714 patent because Deep Green previously filed three suits in this District relating to the '714 patent –thus, this Court should handle all cases relating to the '714 patent instead of splitting the cases between two different courts. *Id.* at 9-10. However, Ooma counters by stating that this argument is "specious" because all of the cases filed by Deep Green here have settled prior to the P.R. 4-1 disclosures and have not afforded the Court any opportunity to become familiar with the asserted '714 patent. (Dkt. No. 26 at 5).

On balance, the Court finds that this factor weighs against transfer. The Court agrees with Ooma's assertion that both courts are equally adept in handling patent infringement lawsuits and also adhere to similar patent-specific case management plans as well as local patent rules. However, the presence of the claims against Uniden weighs against transfer, but given the dismissal of those claims, it does not weigh heavily enough to overcome the factors favoring transfer.

## B. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The "speed with which a case can come to trial and be resolved" may be a factor in the transfer analysis. *Genentech,* 566 F.3d at 1347. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is also a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). However, this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Ooma asserts that this factor is neutral as to transfer and "any difference in court congestion or the time to trial is especially insignificant here," since Deep Green "does not practice the patent and therefore [Deep Green] is not in need of a quick resolution of this case because its position in the market is threatened." *In re WMS Gaming, Inc.,* 564 Fed. Appx. 579, 581 (Fed. Cir. 2014). Thus, Ooma states that this factor is the "most speculative" and "should not alone outweigh [the other] factors" in this case that greatly weigh in favor of transfer. *Genentech,* 566 F.3d at 1347.

On balance, the Court finds that this factor is neutral as to transfer, for similar reasons as outlined above for the fourth private interest factor.

### 2. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. When significant connections exist between a venue and the events that gave rise to the suit, this factor weighs in favor of that venue. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Ooma argues that the Northern District of California has a substantial connection to and interest in the adjudication of this case, and also serves as the "center of gravity" where the accused infringing activity occurred. (Dkt. No. 19 at 11-12); *See Aten Int'l Co. Ltd v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 126 (E.D. Tex. June 25, 2009) ("Since California is clearly the 'center of gravity' with respect to the witnesses and parties to this case, this [local interest] factor weighs in favor of transfer."); *see also Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3-07CV2183-M, 2008 WL 3890495, at *3 (N.D. Tex. Aug. 22, 2008) ("The preferred forum is that which is the center of gravity of the accused activity…a district court should consider the location of the product's development, testing, research, and production" in determining local interest). Ooma also contends that this District has no local interest in this lawsuit, because Deep Green has not alleged any meaningful connections between the facts of this lawsuit and here, there are no witnesses, documents, records, actions (other than potential sales), or facilities of either party in this District, and the Fifth Circuit has stated "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I,* 371 F.3d at 206. (Dkt. No. 19 at 12). Ooma also asserts that the fact its accused products are sold in this District is of no moment because their products are sold nationwide. *Id. See In re Toa Techs., Inc.,* 543 Fed. Appx. 1006, 1009-10 (Fed. Cir. 2013) (nationwide sales of an accused product, including in this District, do not negate a transferee forums' "significant interest in trying this case in a venue in which the accused product was designed"); *Hoffman-La Roche*, 587 F.3d at 1338.

In response, Deep Green contends that Ooma's assertion that the Northern District of California has a connection to this case because Ooma is based there and directs activities related to the accused products from there amounts to little more than an argument that the Northern District of California jury pool would be biased in its favor, an argument that this Court has routinely rejected in past decisions. (Dkt. No. 24 at 11). Thus, Deep Green argues that this factor should be viewed as neutral in the transfer analysis because in a patent case, when the accused products are sold nationwide – as they are here – the alleged injury does not create a substantial local interest in any particular district. *See TS Tech,* 551 F.3d at 1321. Deep Green cites previous instances when this Court rejected similar arguments that a case should be transferred to a forum alleged to have a greater local interest.[1]

Ooma replies by stating that Deep Green stretches this Court's ruling in the *Rembrandt* case into a proposition that the Federal Circuit rejected. *See TS Tech,* 551 F.3d at 1321. Moreover, Ooma asserts that Deep Green has not provided any evidence that a jury pool in the Northern District of California would be biased in favor of Ooma because the local interest factor has nothing to do with the potential inclinations of the jury pool.

---

[1] "For example, in *Rembrandt*, this Court rejected a defendant's similar arguments that the Northern District of California "ha[d] a particular local interest in protecting intellectual property rights that stem from research and development in Silicon Valley," finding that "[a] predisposition toward one party, independent of the merits of the case, cannot be the kind of 'local interest' cognized by the Federal Courts, and … giv[ing] this consideration no weight in its analysis." [2014 WL 3835421, at *3]. Similarly, in Phoenix, this Court rejected another defendant's arguments that the Eastern District of Michigan "had a local interest in [the] case due to [the defendant]'s 'prominence in the Detroit community and its recognized role as a leader in the Detroit-based U.S. automotive industry,'" finding that the argument was "staked upon a connection not to the events that gave rise to this suit as suggested by *In re Volkswagen II*, but rather a connection of some residents of the Eastern District of Michigan, financial or otherwise, to [the defendant] itself." 2015 WL 1431906, at *5. The Court found that "this raise[d] troubling fairness implications and afford[ed] it little weight." (Dkt. No. 24 at 12-13).

As the Fifth Circuit held in *Volkswagen I,* the "local interest in having localized interests decided at home weighs heavily in favor of" the district where the events at issue in the case occurred. 371 F.3d at 206. In this case, Ooma alleges that the accused acts primarily occurred in the Northern District of California. (Dkt. No. 26 at 5). Ooma also points out that the Supreme Court has held that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947). Ooma asserts that Deep Green has alleged no relation between this case and the Eastern District of Texas, nor is there any local interest in trying the dispute between Deep Green and Ooma in this District. (Dkt. No. 26 at 5). Thus, Ooma argues that this factor favors transfer.

On balance, the Court finds that this factor weighs slightly in favor of transfer. The fact that the "center of gravity" of accused infringing activity occurred in the Northern District of California (which is also where the relevant witnesses are, and also where relevant research, development, testing, marketing and production pertaining to the accused products occurs) is given slightly more weight than how just the allegedly infringing accused products are sold in the Eastern District of Texas. However, the weight given to this factor is less when compared to the other factors. Therefore, this factor only weighs slightly in favor as to transfer.

### 3. Familiarity of the Forum With the Law that Will Govern the Case

Both parties agree that this factor is neutral as to transfer. (Dkt. No. 19 at 13; Dkt. No. 24 at 11, 13; Dkt. No. 28 at 5). The Court also agrees that this factor is neutral as to transfer.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties also agree that this factor is neutral as to transfer. (Dkt. No. 19 at 13; Dkt. No. 24 at 11, 13-14; Dkt. No. 28 at 5). The Court also agrees that this factor is neutral as to transfer.

## IV. CONCLUSION

Considering the foregoing, the Court finds that Ooma has shown that the Northern District of California is a clearly more convenient forum for this action. As a result, the Court hereby **GRANTS** Ooma's Motion to Transfer (Dkt. No. 19). Therefore, the Clerk of Court is directed to **TRANSFER** this case to the United States District Court for the Northern District of California.

**SIGNED this 20th day of February, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE